# Exhibit A

1  RAHUL SETHI (SBN 238405)
   OSHEA ORCHID (SBN 298375)
2  SHELBY MINER (SBN 318338)
   DYLAN HACKETT (SBN 329339)
3  VASILI BRASINIKAS (SBN 344662)
   Attorneys-at-Law
4  3415 S. Sepulveda Blvd., Suite 660
   Los Angeles, California 90034
5  T: (310) 649-5300

6
   *Attorneys for Plaintiffs*
7  STEVEN HOWSE, et al., individually, and on
   behalf of other members of the general public
8  similarly situated

9            **SUPERIOR COURT OF CALIFORNIA**

10              **COUNTY OF LOS ANGELES**

11              **UNLIMITED JURISDICTION**

12

13 STEVEN HOWSE, CHRISTIAN OLAGUEZ,       Case No.: 23STCV20524
   SARAH OLAGUEZ, ELIZABETH LEAL-PEREZ,
14 HOLLY KAUFMANN, AMY KNOLES, STEVEN
   LEE, CHRISTINA ORELLANA, GUILLERMO
15 ORELLANA, FRAN CANTELLA, VINCENT       **CLASS ACTION COMPLAINT FOR:**
   CANTELLA, ROMEO WALTER CENTENO,
16 AMBER ENZEN, WENDY DAVILA, SUSAN M.    1. **PRIVATE NUISANCE**
   EVANS, LIONESS-SIA KAMARA, DARYL
17 KRATZ, TRACY SEQUEIRA, CARMEN          2. **PUBLIC NUISANCE**
   GONZALEZ, GAVIN TATE, NATALIE TATE,
18 PARKER TATE, THOMAS TATE, ALICIA       3. **NEGLIGENCE/GROSS NEGLIGENCE**
   HERNANDEZ, SUE HERNANDEZ, RON
19 CUNNINGHAM, individually, and on behalf of    4. **TRESPASS**
   other members of the general public similarly
20 situated;

21          Plaintiffs,                   **DEMAND FOR JURY TRIAL**

22      vs.

23 CHIQUITA CANYON, LLC; WASTE
   CONNECTIONS OF CALIFORNIA, INC.;
24 WASTE CONNECTIONS MANAGEMENT
   SERVICES, INC.; WASTE CONNECTIONS US,
25 INC.; LOS ANGELES COUNTY and DOES 1
   through 50, Inclusive;
26

27          Defendants.

28

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/25/2023 8:58 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

-1-
CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
16

## INTRODUCTION

1.     Plaintiffs bring this class action individually, and on behalf of all members of the general public similarly situated, against Defendants Chiquita Canyon, LLC, Waste Connections of California, Inc., Waste Connections Management Services, Inc., Waste Connections US, Inc. (hereinafter "Landfill Defendants") and Los Angeles County (hereinafter "the County").  Defendants operate the Chiquita Canyon Landfill that releases pollutants, air contaminants, water contaminants and noxious odors, causing material injury to Plaintiffs' and their property through negligence and nuisance, and the Defendant County of Los Angeles has allowed them to continue operating despite the fact they are in violation of the Conditional Use Permit.

## JURISDICTION AND VENUE

2.     This class action is brought pursuant to the California Code of Civil Procedure section 382. The monetary damages and restitution sought by Plaintiffs exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

3.     This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, which grants the superior court "original jurisdiction in all other causes" except those given by statute to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

4.     This Court has jurisdiction over Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

5.     Venue is proper in this Court because, upon information and belief, Defendants maintain offices, have agents, and/or transact business in the State of California, including the County of Los Angeles. The majority of the acts and omissions alleged herein relating to Plaintiffs took place in the State of California, County of Los Angeles.

///

///

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**

17

## THE PARTIES

6.  Plaintiffs and punitive class members are residents and homeowners in the Val Verde, Hasley Canyon, Hasley Hills, Hillcrest and Live Oak communities.

7.  Plaintiff Steven Howse is a resident of Val Verde.

8.  Plaintiffs Christian Olaguez and Sarah Olaguez are residents of Val Verde.

9.  Plaintiff Elizabeth Leal-Perez is a resident of Val Verde.

10. Plaintiff Holly Kaufmann is a resident of Val Verde.

11. Plaintiff Amy Knoles is a resident of Val Verde.

12. Plaintiff Steven Lee is a resident of Val Verde.

13. Plaintiffs Christina Orellana and Gillermo Orellana are residents of Val Verde.

14. Plaintiffs Fran Cantella and Vincent Cantella are residents of Val Verde.

15. Plaintiff Romeo Walter Centeno is a resident of Val Verde.

16. Plaintiff Amber Enzen is a resident of Val Verde.

17. Plaintiff Wendy Davila is a resident of Val Verde.

18. Plaintiff Susan M. Evans is a resident of Val Verde.

19. Plaintiff Lioness-Sia Kamara is a resident of Val Verde.

20. Plaintiff Daryl Kratz is a resident of Val Verde.

21. Plaintiff Tracy Sequeira is a resident of Hillcrest.

22. Plaintiff Carmen Gonzalez is a resident of Val Verde.

23. Plaintiffs Gavin Tate, Natalie Tate, Parker Tate, and Thomas Tate are residents of Val Verde.

24. Plaintiffs Alicia Hernandez and Sue Hernandez are residents of Val Verde.

25. Plaintiff Ron Cunningham is a resident of Val Verde.

26. At all relevant times Defendant Chiquita Canyon, LLC, its subsidiaries and its predecessors constructed, operated or maintained the Chiquita Canyon Landfill located at 29201 Henry Mayo Dr. Castaic, CA 91384, (hereinafter the "Landfill").

27. Upon information and belief Waste Connections of California, Inc., its subsidiaries and its predecessors did and do business in Castaic, California as "Chiquita Canyon a Waste

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**18**

Connections Company."

28.    Upon information and belief Waste Connections Management Services, Inc. its subsidiaries and its predecessors did and do business in Castaic, California as "Chiquita Canyon a Waste Connections Company."

29.    Upon information and belief Waste Connections US, Inc. its subsidiaries and its predecessors did and do business in Castaic, California as "Chiquita Canyon a Waste Connections Company."

30.    There is a unity of interest and ownership between Defendants, such that any individuality and separateness between them has ceased, and each such entity is the alter ego of each other entity.

31.    The names of the other Defendants and/or their involvement in Plaintiffs' situation are unknown to Plaintiffs, who therefore sue such Defendant in this action by fictitious names, identified as DOES 1-100. Each of the Defendants designated as a Doe is legally responsible in some manner for the unlawful acts described above. Plaintiffs will seek leave of the Court to amend this complaint to reflect the true names and capacities of the Defendants designated as Does 1-100 when their identities and/or involvement become known.

32.    Each Defendant (including Does 1-100) was at all relevant times the co-conspirator, employee, servant, partner, joint venturer, successor, assign, aider, and/or abettor of each other Defendant with respect to the wrongful conduct alleged. Each was acting within the course and scope of said conspiracy, agency, employment, unity of interest, and/or joint venture and with the permission, knowledge, approval, ratification, and consent of each other, and each is responsible and liable in some manner for the damages or injuries sustained or threatened to be sustained by Plaintiffs and the Class.

33.    Whenever this complaint references acts of any Defendant or one of its unnamed agents or co-conspirators, such allegation shall be deemed to mean the act of all other Defendants, unless the reference is in a particular cause of action, and each of them acting, individually, jointly, and severally.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
19

34.   Defendants aided and abetted each other in accomplishing the wrongful acts. In doing so, Defendants acted with an awareness of their wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful scheme.

35.   Each Defendant committed, conspired to commit, and/or ratified each of the acts and omissions alleged in this complaint.

## STATEMENT OF FACTS

36.   The land the Chiquita Canyon Landfill presently sits on has been occupied by diverse communities long before it was trashed by the trash of Los Angeles County.  At the time of the Landfill's inception, it was put only feet from the long-standing community of Val Verde and is currently emitting toxic fumes within 500 feet of residential property and even closer to businesses.

### A Brief History of the Communities Involved

37.   Val Verde was settled by the Spanish settlers around a gold strike in the 1800s.  The area had already been inhabited by the Chumash, Gabrieleño, Fernandeño, Vanyume and Tataviam cultures from about A.D. 450 to the early 19th Century.

38.   The site of the Chiquita Canyon Landfill used to include what was previously known as Bowers cave.  Bowers cave was home to some of the most famous Native American materials ever to be found in the United States. These artifacts are now in the Peabody Museum of Archaeology and Ethnology at Harvard University.

39.   In 1924, a group of Black Los Angeles professionals led by actor and real estate developer Sidney P. Dones and including Norman O. Houston, Joe and Charlotta Bass, and Hattie S. Baldwin, among others, bought 1,000 acres to build a vacation resort for African Americans in the rolling hills west of Castaic Junction between Hasley Canyon and the Santa Clara River, what is now known as Val Verde.  The resort featured a community house, tennis courts, baseball fields, hiking trails and a nine-hole golf course. It was an immediate success with buyers from nearby states, and as far away as Chicago and Cleveland, buying lots and planning to build permanent residences. While the area was never exclusively African American, they were the predominant owners of the restaurants, inns and stores in the area.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**20**

40. Black professionals bought half-acre lots and built weekend and summer homes. Restaurants and inns followed.

41. In 1939, fifty acres of adjoining land were donated to the County of Los Angeles for a park. A clubhouse and pool were built. In 1940, actress Hattie McDaniel and other Black celebrities attended the dedication ceremonies. That same year a beauty contest was held for young women where "you don't have to be beautiful in the usually accepted way, for the girls will be judged for Negroid type."

42. The park became a community gathering place. Children played ball by day, while teenagers danced in the clubhouse at night. The town celebrated the Fourth of July with a parades and fireworks. Through the years jazz bands played at the community center, visitors rode horses through the surrounding hills, and thousands of picnickers and vacationers summered and wintered in Val Verde.

43. Bill "Bojangles" Robinson helped establish a church.

44. James Earl Jones, Sr., raised horses on a ranch nearby.

45. In 1947, 18,000 people, mostly Black, visited Val Verde for Labor Day. Soon afterwards it was nicknamed "The Black Palm Springs."

46. Val Verde sent its boys off to war in the 1940s. In the 1950s, the town selected a "Miss Val Verde," while James Earl Jones raised thoroughbred horses on a ranch nearby.

47. In the 1950's plans for more neighborhoods to be built were developed including what is now Hasley Hills.

48. With the civil rights movement in the 1960's, Val Verde, like other communities in Los Angeles and across the County, slowly became integrated.

49. Val Verde remains a diverse community of working-class people. Val Verde currently has a population of approximately 3,177.

50. On October 4, 1995 Val Verde Civic Association was founded.

51. Hasley Canyon was and is a horse-riding community with miles of trails and many beautiful ranch properties. According to the 2020 US Census Hasley Canyon has a population of 1,450.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
21

52.    The Hasley Canyon Equestrian Center, which just feet from the Landfill, is a sixty-seven-acre facility along Hasley Creek featuring a fenced arena, horse warm-up area, equestrian barn with office and storage space, equestrian trail connections and day use parking for horse trailers and cars. This center provides a public location for local equestrian enthusiasts and professionals, law enforcement mounted units and educational facilities.

53.    The Hasley Hills community was developed from 1988 – 2003 and in the early 2000's, with approval from the County, Hasley Hills became home to many families.  The Hasley Hills development included Hasley Canyon Park, right next to Live Oak Elementary.

54.    The Hillcrest community was developed north of Hasley Canyon from the early 1990's and continued to be built until 2002.  The housing includes single family homes, and some condos.  Hillcrest has approximately 8,560 residents.

55.    Williams Ranch is currently being built and sold off Hasley Canyon Road with a plan to total 497 new homes.  In addition, the County has approved a development even closer to the Landfill, Sterling Ranch Estates.

**The Chiquita Canyon Landfill**

56.    The Chiquita Canyon Landfill was first approved for a land reclamation project by the Los Angeles County Planning Commission on December 21, 1965.

57.    The Landfill site is currently approximately 500 feet from Val Verde residences, 150 feet from a United State Post Office. To the north of the Landfill is the Hasley Equestrian Center and a business park only feet from the Landfill.  Live Oak Elementary School and Hasley Canyon Park are also in close proximity to the Landfill.

58.    On March 2, 1977, the Commission approved Conditional Use Permit 1010 for continued operation and maintenance of a waste disposal facility and land reclamation project with appurtenant facilities. On November 24, 1982, the Commission approved Conditional Use Permit 1809 for expansion of the existing landfill with Class II and Class III disposal sites. The Board of Supervisors approved Conditional Use Permit 89-081 on May 20, 1997, for continued operation of a Class III landfill, after an appeal of the Commission's approval of Conditional Use Permit 89-081.

59.    Conditional Use Permit 89-081 was scheduled to expire on November 24, 2019, or

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**22**

when the landfill reached a waste disposal limit of 23,000,000 tons, whichever occurred first.

60.    In or about 1997 the Landfill Defendants signed agreement with Val Verde Civic Association by which they agreed to close the Landfill no later than 2019.

61.    In or about 2014, the Landfill Defendants started filing applications for the current Conditional Use Permit with the County's Department of Regional Planning ("Regional Planning") to continue and expand the landfill use.   The expansion proposed included covering 400 acres and taking in twice as many tons of trash daily.  This also meant removing Oak Trees.

62.    The Landfill was required to create a cancer map which showed that there were places within close proximity to the Landfill with populations with increased risk of developing cancer, including Live Oak Elementary.

63.    Landfill Defendants requested that the Defendant County waive County Code Section 22.04.110 to allow the continued operation of the landfill during the pendency of the Conditional Use Permit with the alleged goal to protect the health and safety of the Plaintiffs.

64.    The Defendant County granted the requested waiver on March 17, 2016, subject to interim operating conditions. The interim operating conditions purported to ensure that the Landfill Defendants continue to comply with Conditional Use Permit 89-081 conditions, with the exception of the 23,000,000-tonnage limit. Instead, the landfill, under the waiver, could not exceed the 29,400,000- ton-threshold analyzed in the Environmental Impact Report ("EIR") for Conditional Use Permit 89-081. The waiver allowed the Landfill operations to continue on a temporary basis until the earlier of the following: (a) a final action is taken on the Project (withdrawal, approval, or denial); (b) July 31, 2017; or (c) revocation of the waiver by the County.

65.    In June 2016, the landfill reached and exceeded the 23,000,000 tonnage limit, but it continued to operate because the County had granted the waiver, and associated conditions.

66.    An environmental impact report was prepared which indicated that air quality and greenhouse gas emissions could not be completely mitigated.

67.    A Mitigation Monitoring and Reporting Program was prepared to mitigate Project impacts to geology and hydrology, surface water drainage, biological resources, cultural and paleontological resources, air quality, greenhouse gas emissions, and climate change.

68.     The County claims that with implementation of mitigation measures, environmental impacts to the Project will be reduced to less than significant levels, except for impacts to air quality, greenhouse gas emissions, and climate change.

69.     However, it was and is clear that impacts to air quality and greenhouse gas emissions and climate change could not be mitigated.  As a result of those remaining significant unavoidable impacts, CEQA Findings of Fact and a Statement of Overriding Considerations ("CEQA Findings and SOC") were prepared for the Project.

70.     The community contacted Defendants, including the County's Regional Planning and the Landfill Defendants in writing, by phone, and gave oral testimony expressing serious concerns about the continued operation of the Landfill's impacts to public health, air quality, odors, traffic, and environmental justice issues, biological resources, greenhouse gases.  The Val Verde Civic Association also argued that the Landfill Defendants were attempting to breach conditions of the Conditional Use Permit 89-081 conditions, and the 1997 agreement between the Val Verde Civic Association and the Landfill Defendants.

71.     Many residents of Val Verde had already reported that they had significant health problems including headaches, lightheadedness, dizzy spells, asthma, other breathing conditions, rashes, cancer and tumors.

72.     The community also raised concerns about the Landfill's proximity to Live Oak Elementary and other schools.

73.     On July 25, 2017, the County approved another conditional use permit allowing the Defendant's to expand and operate for another 30 years.  The expansion included increasing the waste footprint from 257 acres to 400 acres, increasing the maximum elevation from 1,430 to 1,573 feet and increasing the daily disposal limits from 6,000 tons per day to 12,000 tons per day.

74.     Section 12 of the Conditional Use Permit required that the Landfill operate in compliance with conditions and all applicable laws, statutes and ordinances.  Failure to comply with any conditions or applicable laws, statutes and ordinances were clearly stated to violate the Conditional Use Permit.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
24

75. Under Section 15 of the Conditional Use Permit Regional Planning can order cessation of the Conditional Use Permit if it is determined that it is necessary for the health, safety, and/or welfare of the County's residents or the environment.

76. Under Section 20 of the Conditional Use Permit any person violating a provision of this Permit would be guilty of a misdemeanor, pursuant to Section 22.60.340 of the County Code. Regional Planning or a Hearing Officer may also be given authority to revoke or modify this Permit if the Commission or Hearing Officer finds that the conditions have been violated, or that this grant has been exercised so as to be detrimental to the public's health or safety, or so as to be a nuisance, or as otherwise authorized pursuant to Chapter 22.56, Part 13, of the County Code.

77. Multiple sections of the current Conditional Use Permit make it clear that the facility is not in compliance with the Permit if the Landfill allows odors to become a nuisance in adjacent residential and business areas.

78. Under Sections 63-65 of the Conditional Use Permit the Landfill is required not to be a nuisance to the community and to comply with South Coast Air Quality Management District's requirements.

79. Regional Planning can order cessation of the Conditional Use Permit if it is determined that it is necessary for the health, safety, and/or welfare of the County's residents or the environment.

**South Coast Air Quality Management District Has Been Issuing Nuisance**

**Notices of Violation for Months**

80. The South Coast Air Quality Management District (South Coast AQMD) is under a legal obligation to enforce air pollution regulations. These regulations are primarily meant to ensure that the surrounding (or ambient) air meets federal and state air quality standards.

81. On February 27, 2023, South Coast Air Quality Management District issued the Landfill Defendants a Notice of Violation under 42400(a) for failing to provide laboratory analysis and Draeger tube reading for landfill gas from the preceding twelve months in an Excel spreadsheet as required.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
25

82.     On April 6, 2023, South Coast Air Quality Management District issued the Landfill Defendants a Notice of Violation under 1150.1(d)(3) for failure to operate the gas collection and control systems so that there are not leaks that exceed 500 ppmv TOC measured as methane at any component under positive pressure.

83.     South Coast Air Quality Management District is responsible for taking reports of nuisance, confirming these reports and issuing Notices of Violation where there is a violation of the law.

84.     Under Rule 402 – Nuisance, "A person shall not discharge from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or which endanger the comfort, repose, health or safety of any such persons or the public, or which cause, or have a natural tendency to cause, injury or damage to business or property.

85.     Pursuant to South Coast Air Quality Management District's policies and practices to establish a violation of Rule 402, the agency must receive three calls to their hotline, 800 CUT SMOG, within an hour to dispatch an investigator.  If an investigator then is able to confirm the complaint with the members of the public who complained and the source of the complaint and at least 6 complaints can be verified in a 24-hour period, then a Notice of Violation is issued.

86.     On May 17, 2023, South Coast Air Quality Management District issued the first Notice of Violation against Chiquita Canyon for public nuisance in violation of the agency's Rule 402 and California Health & Safety Code Section 41700.

87.     In May, South Coast Air Quality Management District began receiving hundreds of odor complaints that Agency investigators traced back to the landfill.

88.     As a result of its investigation, South Coast Air Quality Management District found that the landfill was experiencing elevated levels of sulfur, specifically dimethyl sulfide, in its landfill gas—which its gas treatment system is not designed to remove. The underlying cause has been found to be caused by a subsurface chemical reaction.

89.     On May 18, 2023, June 25, 2023, June 27, 2023, June 28, 2023, June 29, 2023, June 30, 2023, July 2, 2023, July 3, 2023, July 7, 2023, July 10, 2023, July 11, 2023, July 13, 2023, July

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**26**

15, 2023, July 16, 2023, July 17, 2023, July 18, 2023, July 19, 2023, July 20, 2023, July 21, 2023, July 22, 2023, July 23, 2023, July 24, 2023, July 26, 2023, July 27, 2023, July 28, 2023, July 29, 2023, July 30, 2023, July 31, 2023, August 1, 2023, August 2, 2023, August 3, 2023, August 4, 2023, August 5, 2023, August 6, 2023, August 7, 2023, August 9, 2023, August 10, 2023, August 11, 2023, August 12, 2023, August 13, 2023, August 14, 2023, August 15, 2023, August 16, 2023, August 17, 2023, August 18, 2023, August 19, 2023, August 21, 2023, and August 23, 2023 the South Coast Air Quality Management District issued the Landfill Defendant's Notices of Violation under Rule 402 and other Agency Rules.

90. On August 15, 2023 South Coast AQMD reported receiving more than 1,200 odor complaints coming from Val Verde, Hasley Canyon, Hasley Hills, Hillcrest, Williams Ranch and Live Oak.

91. August 18, 2023, the County's Department of Regional Planning issued a Notice of Violation of the Conditional Use Permit, specifically condition 12.

## CLASS ALLEGATIONS

**A.    Definition of the Class**

92. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to the Code of Civil Procedure § 382. Plaintiffs seek to represent a Class of persons defined as:

> All persons who rented or were owner-occupants of any housing unit located in whole or in part within the Class Area at any time since 1972. The Class Area includes the Val Verde, Hasley Hills, Hasley Canyon, Hillcrest, Live Oak and Williams Ranch neighborhoods.

93. Plaintiffs reserve the right to establish subclasses as appropriate.

**B.    Numerosity**

94. Upon information and belief, there are over 5,000 residents within a 3-mile radius of the landfill. Accordingly, the members of the Class are so numerous that joinder of all parties is impracticable.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**27**

## C.  Commonality

95.  There is a well-defined community of interest in the relevant questions of the law and fact affecting punitive Class members. Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to the following:

a)  Whether Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly, and negligently failed to construct, maintain and/or operate the Landfill;

b)  Whether Defendant owed any duties to Plaintiffs;

c)  Which duties Defendant owed to Plaintiffs;

d)  Whether it was reasonably foreseeable that Defendants' failure to properly construct, maintain, and/or operate the landfill would result in an invasion of Plaintiff possessory interests; and,

e)  What is the proper measure of damages incurred by the Plaintiffs and the Class members?

## D.  Typicality

96.  Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

97.  The claims of Plaintiffs and the other Class members have a common origin and share a common basis. The claims originate from the same failure of Defendant to properly construct, maintain and/or operate the landfill.

98.  All Class members have suffered injury, in fact, resulting in the loss of property value by reason of Defendants' failure to properly construct, maintain and/or operate the landfill.

## E.  Adequacy of Representation

99.  Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs are representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A
28**

100. Plaintiffs have retained the services of counsel, who are experienced in complex class action litigation. Plaintiff's counsel will adequately represent Plaintiffs and all absent Class members.

**F.     Class Treatment Is the Superior Method of Adjunction**

101. The prosecution of separate actions by individual Class members would create a risk of inconsistent or vary adjunctions which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof, and legal theories would also create and allow the existence of inconsistent and incompatible rights within the class.

102. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

      a)     Individual claims by the Class members would be impracticable as the costs of pursuit would far exceed what anyone Class member has at stake;

      b)     Very little individual litigation has been commenced over the controversies alleged in this Complaint, and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

      c)     The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

      d)     The proposed class action is manageable.

103. Therefore, class treatment of Plaintiffs' claims is appropriate and necessary.

<u>**FIRST CAUSE OF ACTION**</u>

PUBLIC NUISANCE

(Against All Defendants)

104. Plaintiffs restate the allegations set forth in the preceding paragraphs.

105. The noxious odors, pollutants, and air contaminants which entered Plaintiffs' and punitive class members' property originated from the Landfill constructed, maintained and/or operated by Defendants.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**29**

106. The odors, pollutants and air contaminants invading Plaintiffs' property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways: causing Plaintiffs and punitive class members to remain inside their homes and forego the use of their yards; causing Plaintiffs and punitive class members to keep doors and windows closed when weather conditions otherwise would not so require; causing Plaintiffs and punitive class members embarrassment and reluctance to invite guests to their homes, and negatively impacting Plaintiffs' and other punitive class members' asset values.

107. Defendant owed and continues to owe a duty to Plaintiffs and punitive class members to take positive action to prevent and/or abate the interference with the public interest and/or the invasion of the private interests of the Plaintiffs and punitive class members.

108. By constructing, expanding, and then failing to repair and/or maintain its facility reasonably, Defendants have negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' and punitive class members' property by noxious odors, pollutants, and air contaminants.

109. As a foreseeable, direct, and proximate result of the foregoing conduct of Defendants, Plaintiffs and punitive class members suffered injuries and damages to their property as alleged herein.

110. The injuries and damages suffered by Plaintiffs and punitive class members are specially injurious to themselves as compared with the general public.

111. Plaintiffs and punitive class members did not consent for noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their land and property.

112. By causing noxious odors, pollutants, and air contaminants produced and controlled by Defendants to physically invade Plaintiffs' and punitive class members' land and property, Defendants intentionally, recklessly, and negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs and punitive class members' comfortable use and enjoyment of their property.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

113. Defendants' substantial and unreasonable interference with Plaintiffs' and punitive class members' use, and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs and punitive class members for all damages arising from such nuisance, including compensatory, exemplary, injunctive, and punitive relief. Such Defendants' actions were; and continue to be, intentional, willful, malicious and made with a conscious disregard for the rights of Plaintiffs and punitive class members, entitling Plaintiffs and punitive class members to compensatory and punitive damages, injunctive relief, and reasonable attorneys' fees pursuant to Code of Civil Procedures § 1021.5 and otherwise.

114. As to Defendant County of Los Angeles, Plaintiffs seek only injunctive relief at this time and intend to amend the complaint upon filing of a government claim.

## **SECOND CAUSE OF ACTION**

### PRIVATE NUISANCE

#### (Against All Defendants)

115. Plaintiffs restate the allegations set forth in the preceding paragraphs.

116. The noxious odors, pollutants, and air contaminants which entered Plaintiffs' and punitive class members' property originated from the Landfill constructed, maintained and/or operated by Defendants.

117. The odors, pollutants and air contaminants invading Plaintiffs' and punitive class members' property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways: causing Plaintiffs and punitive class members to remain inside their homes and forego the use of their yards; causing Plaintiffs and punitive class members to keep doors and windows closed when weather conditions otherwise would not so require, causing Plaintiffs and punitive class members embarrassment and reluctance to invite guests to their homes, and negatively impacting Plaintiffs' and other punitive class members' asset values.

118. Defendant owed and continues to owe a duty to Plaintiffs and punitive class members to take positive action to prevent and/or abate the interference with the public interest and/or the invasion of the private interests of the Plaintiffs and punitive class members.

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

119.  By constructing, expanding and then failing to repair and/or maintain its facility reasonably, Defendants have negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' and punitive class members' property by noxious odors, pollutants, and air contaminants.

120.  As a foreseeable, direct, and proximate result of the foregoing conduct of Defendants, Plaintiffs and punitive class members suffered injuries and damages to their property as alleged herein.

121.  The injuries and damages suffered by Plaintiffs and punitive class members are specially injurious to themselves as compared with the general public.

122.  Plaintiffs and punitive class members did not consent for noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their land and property.

123.  By causing noxious odors, pollutants, and air contaminants produced and controlled by Defendants to physically invade Plaintiffs' and punitive class members' land and property, Defendants intentionally, recklessly, and negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs' and punitive class members' comfortable use and enjoyment of their property.

124.  Defendants' substantial and unreasonable interference with Plaintiffs' and punitive class members' use, and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs and punitive class members for all damages arising from such nuisance, including compensatory, exemplary, injunctive, and punitive relief such Defendants' actions were, and continue to be, intentional, willful, malicious and made with a conscious disregard for the rights of Plaintiffs and punitive class members, entitling Plaintiffs and punitive class members to compensatory and punitive damages, injunctive relief, and reasonable attorneys' fees pursuant to Code of Civil Procedures § 1021.5 and otherwise.

125.  As to Defendant County of Los Angeles, Plaintiffs seek only injunctive relief at this time and intend to amend the complaint upon filing of a government claim.

///

///

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A
32**

# THIRD CAUSE OF ACTION

NEGLIGENCE/GROSS NEGLIGENCE

(Against All Defendants)

126.  Plaintiffs restate the allegations set forth in the preceding paragraphs.

127.  On occasions too numerous to mention, Defendant negligently and improperly constructed, maintained and/or operated the Landfill in that the Landfill caused the emission of noxious odors, pollutants, and air contaminants onto Plaintiffs' and punitive class members' homes, land, and property.

128.  As a direct and proximate result of Defendants negligence and gross negligence in constructing, maintaining and/or operating the Landfill, Plaintiffs' and punitive class members' property, on occasions too numerous to mention, was invaded by noxious odors, pollutants, and air contaminants.

129.  As further direct and proximate result of the foregoing conduct of Defendants, Plaintiffs and punitive class members suffered damages to their property as alleged herein.

130.  The invasion and subsequent damages suffered by the Plaintiffs and punitive class members were reasonably foreseeable by Defendant.

131.  By failing to properly construct, maintain and/or operate its Landfill, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors, pollutants, noise, dust, debris, and air contaminants would not invade Plaintiffs' and punitive class members' property.

132.  By failing to construct, maintain and/or operate its Landfill, Defendant has intentionally caused the invasion of Plaintiffs' and punitive class members' property by noxious odors, pollutants, and air contaminants.

133.  Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained and/or operated the Landfill and knew, or should have known upon reasonable inspection that such actions would cause Plaintiffs' and punitive class members' property to be invaded by noxious odors, pollutants, and air contaminants.

134.  As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' and punitive class members' residences were invaded by noxious odors, pollutants, and

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**33**

air contaminants.

135.  The conduct of Defendants in knowingly allowing conditions to exist which caused noxious odors, pollutants, and air contaminants to physically invade Plaintiffs' and punitive class members' property constitutes gross negligence as it demonstrated a substantial lack of concern for whether an injury resulted to Plaintiffs and punitive class members.

136.  Defendants' gross negligence was malicious and made with a conscious disregard for the rights and safety of Plaintiffs and punitive class members, which entitles Plaintiffs and punitive class members to an award of compensatory, exemplary, and punitive relief, along with reasonable attorneys' fees pursuant to Code of Civil Procedures § 1021.5 and otherwise.

137.  As to Defendant County of Los Angeles, Plaintiffs seek only injunctive relief at this time and intend to amend the complaint upon filing of a government claim.

<u>**FOURTH CAUSE OF ACTION**</u>

TRESPASS

(Against All Defendants)

138.  Plaintiffs restate the allegations set forth in the preceding paragraphs.

139.  The noxious odors, pollutants, and air contaminants which entered Plaintiffs' and punitive class members' property originated from the Landfill constructed, maintained and/or operated by Defendants.

140.  The odors, pollutants and air contaminants invading Plaintiffs' and punitive class members' property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with their exclusive possession of their land, including in but not limited to the following ways: causing Plaintiffs and punitive class members to remain inside their homes and forego the use of their yards; causing Plaintiffs and punitive class members to keep doors and windows closed when weather conditions otherwise would not so require, causing Plaintiffs and punitive class members' embarrassment and reluctance to invite guests to their homes, and negatively impacting Plaintiff's and other punitive class members' asset values.

141.  Defendant owed and continues to owe a duty to Plaintiffs and punitive class members to take positive action to prevent and/or abate the interference with the public interest and/or the

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

**Exhibit A**
**34**

invasion of the private interests of the Plaintiffs and punitive class members.

142. By constructing, expanding, and then failing to repair and/or maintain its facility reasonably, Defendants have negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' and punitive class members' property by noxious odors, pollutants, and air contaminants.

143. As a foreseeable, direct, and proximate result of the foregoing conduct of Defendants, Plaintiffs and punitive class members suffered injuries and damages to their property as alleged herein.

144. Plaintiffs and punitive class members did not consent for noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their land and property.

145. By causing noxious odors, pollutants, and air contaminants produced and controlled by Defendants to intrude upon Plaintiffs' and punitive class members' land and property, Defendants intentionally, recklessly, and negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs' and punitive class members' right to exclusive possession of their property.

146. Defendants' substantial and unreasonable interference with Plaintiffs and punitive class members' use, and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs and punitive class members for all damages arising from such nuisance, including compensatory, exemplary, injunctive, and punitive relief such Defendants' actions were; and continue to be, intentional, willful, malicious and made with a conscious disregard for the rights of Plaintiffs and punitive class members, entitling Plaintiffs and punitive class members to compensatory and punitive damages, injunctive relief, and reasonable attorneys' fees pursuant to Code of Civil Procedures § 1021.5 and otherwise.

147. As to Defendant County of Los Angeles, Plaintiffs seek only injunctive relief at this time and intend to amend the complaint upon filing of a government claim.

///

///

///

CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit A
35

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed class, pray for judgment against Defendants as follows:

1. Injunctive relief to include revocation of the Conditional Use Permit, closure of the Landfill, and implementation of the Closure Plan;

2. Certification of the proposed Class pursuant to Code of Civil Procedures § 382;

3. Designation of Plaintiffs as representative of the proposed Class and designation of their counsel as Class counsel;

4. Judgement in favor of Plaintiffs and the Class members and against Defendants;

5. Award Plaintiffs and the Class members compensatory and punitive damages, and attorney's fees and costs, including pre-judgement and post-judgment interest thereon against all non-public entity Defendants;

6. Award Plaintiffs and the Class members attorney's fees pursuant to Code of Civil Procedures § 1021.05; and

7. Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.


Dated: August 25, 2023

By: _____
OSHEA ORCHID
RAHUL SETHI
SHELBY MINER
DYLAN HACKETT
BRASINIKAS
Attorneys for Plaintiffs STEVEN HOWSE, et al.,
individually, and on behalf of other members of
the general public similarly situated

-21-
CLASS ACTION LAWSUIT FOR DAMAGES AND INJUNCTIVE RELIEF