1   GARY J. SMITH (SBN 141393)
      gsmith@bdlaw.com
2   JACOB P. DUGINSKI (SBN 316091)
      jduginski@bdlaw.com
3   BEVERIDGE & DIAMOND P.C.
    456 Montgomery Street, Suite 1800
4   San Francisco, CA 94104
    Telephone: (415) 262-4000
5
     KAITLYN D. SHANNON (SBN 296735)
6      kshannon@bdlaw.com
     MEGAN L. MORGAN
7    (admitted pro hac vice)
       mmorgan@bdlaw.com
8    JAMES B. SLAUGHTER
     (admitted pro hac vice)
9      jslaughter@bdlaw.com
     BEVERIDGE & DIAMOND, P.C
10   1900 N Street, N.W., Suite 100
     Washington, DC 20036-1661
11   Telephone: (202) 789-6040
     Facsimile: (202) 789-6190

    PAUL S. CHAN (SBN 183406)
      pchan@birdmarella.com
    ARIEL A. NEUMAN (SBN 241594)
      aneuman@birdmarella.com
    SHOSHANA E. BANNETT
     (SBN 241977)
      sbannett@birdmarella.com
    BIRD, MARELLA, BOXER,
    WOLPERT, NESSIM, DROOKS,
    LINCENBERG & RHOW, P.C.
    1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
    Telephone: (310) 201-2100
    Facsimile:  (310) 201-2110

12

13   *Attorneys for Defendant Chiquita Canyon, LLC,*
     *Chiquita Canyon, Inc. and Waste Connections US. Inc.*

14

15   ## UNITED STATES DISTRICT COURT

16   ## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

17

| | |
|---|---|
| STEVEN HOWSE, et al., | CASE NO. 2:23-cv-08380-MEMR-MAR |
| Plaintiffs, | Assigned to Hon. Maame Ewusi-Mansah Frimpong |
| vs. | |
| CHIQUITA CANYON, LLC, et al., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** |
| Defendants. | |
| | Date:    August 22, 2024 |
| | Time:    10:00 a.m. |
| | Place:   Courtroom 8B |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... 3

I.    INTRODUCTION ................................................................................. 6

II.   BACKGROUND ................................................................................... 7

    A.    The Chiquita Canyon Landfill. .................................................. 7

    B.    The Howse Complaint and Allegations. ..................................... 9

    C.    Procedural History. ................................................................... 11

III.  STANDARD OF REVIEW ................................................................. 11

IV.   ARGUMENT ....................................................................................... 12

    A.    Plaintiffs' Negligence Per Se Claim Fails as A Matter of Law. ................... 12

    B.    The Punitive Damages Request Should Be Dismissed. ............... 13

        1.    Plaintiffs' Rote Recital of the Legal Standard for Punitive Damages Is Insufficient. ....................................... 14

        2.    Howse Fails to Plead With Any Specificity Alleged Acts or Conduct by Individual Defendants or Corporate Leaders. ............................... 16

    C.    Plaintiffs Have Not Alleged Facts Sufficient to Support Alter Ego Liability or Piercing of the Corporate Veil. ............................... 19

        1.    The Allegations Do Not Give Rise to A Plausible Inference of Unity of Interest Between Defendants. ........................... 19

        2.    There is No Suggestion That Any Inequitable Outcome Would Result Absent Alter Ego Liability. ........................... 22

    D.    The TAC Offers No Independent Allegations Against The WC-Entities and Fails to Identify Which Defendants' Actions Give Rise to Their Claims. ... 23

V.    CONCLUSION .................................................................................... 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages(s)**

*Achal v. Gate Gourmet, Inc.*,
   114 F. Supp. 3d 781 (N.D. Cal. 2015) ........................................................................ 17, 18

*Altman v. PNC Mortg.*,
   850 F. Supp. 2d 1057 (E.D. Cal. 2012) ..................................................................... 24

*Ananiev v. Aurora Loan Services., LLC*,
   No. C 12-2275 SI, 2012 WL 2838689 (N.D. Cal. July 10, 2012) ........................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 12, 15, 20

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................ 8

*Bagdasaryan v. Bayview Loan Servicing, LLC*,
   No. CV1406691SJOVBKX, 2015 WL 13665037 (C.D. Cal. Oct. 19, 2015) ........................ 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 12

*Brousseau v. Jarrett*,
   73 Cal. App. 3d 864 (1977) ................................................................................ 15

*Coppola v. Smith*,
   982 F. Supp. 2d 1133 (E.D. Cal. 2013) ..................................................................... 14, 15

*Cree, Inc. v. Tarr Inc.*,
   No. 3:17-cv-00506-GPC-NLS, 2017 WL 3219974 (S.D. Cal. July 28, 2017) ...... 19, 20, 22, 23

*Cruz v. HomeBase*,
   83 Cal. App. 4th 160 (2000) ................................................................................ 14, 17, 18

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ................................................................................ 24

*Ebaugh v. Rabkin*,
   99 Cal. Rptr. 706 (Cal. Ct. App. 1972) ..................................................................... 14

*Endurance Am. Specialty Ins. Co. v. Lance–Kashian & Co.*,
   No. CV F 10-1284 LJO DLB, 2010 WL 3619476 (E. D. Cal. Sept. 13, 2010) ...................... 16

*First Western Bank & Trust Co. v. Bookasta*,
   267 Cal. App. 2d 910 (1968) ................................................................................ 23

*Frausto v. Bank of Am., Nat'l Ass'n*,
   No. SA CV 19-1583-DOC-ADS, 2019 WL 8012420 (C.D. Cal. Dec. 4, 2019) .................... 17

*Garcia v. M-F Athletic Co.*
   CIV 11-2430 WBS GGH, 2012 WL 531008 (E.D. Cal. Feb. 17, 2012) ................................ 15

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ..................................................................... 24

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..................................................................... passim

*Grimberg v. United Airlines, Inc.*,
   No. CV 22-8191-MWF (JCX), 2023 WL 2628708 (C.D. Cal. Jan. 10, 2023) ................. 17, 18

3

*Grimberg v. United Airlines, Inc.,*
    No. CV 22-8191-MWF (JCX), 2023 WL 3431912 (C.D. Cal. Feb. 27, 2023) ..................... 18

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,*
    328 F.3d 1122 (9th Cir. 2003) .............................................................................................. 21

*Hokama v. E.F. Hutton & Co., Inc.,*
    566 F. Supp. 636 (C.D. Cal. 1983) ...................................................................................... 19

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.,*
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................................ 16

*Inst. of Veterinary Pathology, Inc. v. Cal. Health Lab'ys, Inc.,*
    116 Cal. App. 3d 111 (1981) ............................................................................................... 21

*Jones v. Cnty. of San Bernadino,*
    No. EDCV 21-695 JGB (SPx), 2022 WL 3013060 (C.D. Cal. May 19, 2022) ..................... 14

*Katzir's Floor & Home Design, Inc. v. M–MLS.com,*
    394 F.3d 1143 (9th Cir. 2004) .............................................................................................. 21

*Kelley v. Corr. Corp. of Am.,*
    750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................................................... 15

*Mesler v. Bragg Mgmt. Co.,*
    39 Cal. 3d 290 (1985) ..................................................................................................... 22, 23

*Millard v. Biosources, Inc.,*
    156 Cal. App. 4th 1338 (2007) ............................................................................................ 12

*Neilson v. Union Bank of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................... 23

*NetApp, Inc. v. Nimble Storage, Inc.,*
    No. 5:13-CV-05058-LHK HRL, 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) .......... 20, 21, 22

*People of California v. Kinder Morgan Energy Partners, L.P.,*
    569 F. Supp. 2d 1073 (S.D. Cal. 2008) ............................................................................... 12

*Perez v. Auto Tech. Co.,*
    No. 13-06728-MMM (VBKx), 2014 WL 12588644 (C.D. Cal. July 14, 2014) ..................... 15

*Quiroz v. Seventh Ave. Ctr.,*
    140 Cal. App. 4th 1256 (2006) ............................................................................................ 13

*Rivin v. Patrick K. Willis Co.,*
    No. 2:20-cv-07431-RGK-KS, 2020 WL 8365251 (C.D. Cal. Dec. 4, 2020) ........................ 16

*Shroyer v. New Cingular Wireless Services, Inc.,*
    622 F.3d 1035 (9th Cir. 2010) .............................................................................................. 12

*Simonyan v. Ally Fin., Inc.,*
    No. CV 12-08495 JFW, 2013 WL 45453 (C.D. Cal. Jan. 3, 2013) ....................................... 23

*Smith v. Superior Court,*
    13 Cal. Rptr. 2d 1033 (Cal. Ct. App. 1992) ......................................................................... 15

*Somerville v. Medtronic, Inc.,*
    No. 820CV02177JLSADS, 2021 WL 5926029 (C.D. Cal. Aug. 19, 2021) ............... 12, 14, 15

*Sonora Diamond Corp. v. Superior Court,*
    83 Cal. App. 4th 523 (2000) ..................................................................................... 19, 21, 22

*Takhar v. People ex rel. Feather River Air Quality Mgmt. Dist.,*
    27 Cal. App. 5th 15 (2018) .................................................................................................. 13

4

*Turner v. Seterus, Inc.*,
   27 Cal. App. 5th 516 (2018).................................................................................... 12
*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
   No. 19-cv-02778-TSH, 2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) ..................... 13
*Woolstrum v. Mailloux*,
   141 Cal. App. 3d Supp. 1 (1983) ........................................................................... 14
*Yagman v. Wunderlich*,
   No. 2:21-cv-06093-SB-MRW, 2021 WL 5707166 (C.D. Cal. Nov. 22, 2021)....................... 24

**Statutes**

Cal. Civ. Code § 3294 ................................................................................... 14, 16, 17
Cal. Evid. Code § 669 ............................................................................................ 12
Cal. Health & Safety Code § 42402 ................................................................. 13, 16
Cal. Health & Safety Code § 42403 ......................................................................... 13
Cal. Health & Safety Code § 41700 ........................................................ 10, 13, 16, 24

**Other Authorities**

Federal Rule of Civil Procedure 8 ............................................................................. 24
Federal Rule of Civil Procedure 12 ......................................................................... 11
South Coast AQMD Rule 402 ....................................................................... 10, 13, 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

# I. INTRODUCTION

The Howse Third Amended Complaint ("TAC") is Plaintiffs' fourth attempt to dress up a routine odor nuisance case into something more and sue Defendants with no connection to Chiquita Canyon Landfill. The Court should dismiss with prejudice extraneous claims and Defendants so that the parties can focus on the nuisance and negligence claims that are the crux of this case. Defendants Chiquita Canyon, LLC ("Chiquita"), Chiquita Canyon, Inc. ("CCI") and Waste Connections US, Inc. ("WCUS") (collectively "Defendants") move the Court to dismiss:

- the negligence per se claim;
- the punitive damages prayer;
- all claims against CCI and WCUS (together the "WC-Entities"); and
- the alter ego allegations.

Plaintiffs, including lead Plaintiff Steven Howse (collectively, "Howse" or "Plaintiffs"), allege that odors and gasses from the Chiquita Canyon Landfill in Castaic ("Landfill")—a landfill that manages nearly a quarter of Los Angeles County's municipal solid waste—have caused a nuisance, and that Defendants' conduct supports negligence and negligence per se causes of action. Howse also seeks punitive damages. This is a simple odor nuisance and negligence case and the claims should be limited to those two causes of action against the one entity – Chiquita – that operated the Landfill.

Negligence per se is an evidentiary doctrine, not a cause of action that entitles Plaintiffs to seek separate damages. Such pleading is improper, and the claim should be dismissed.

Nor are punitive damages available. Odors and gasses are commonplace at landfills and are regulated under permits and state and local law. Rote allegations and conclusory characterizations of generalized conduct by "Defendants" fail to satisfy the punitive damages pleading standard. Additionally, a corporation cannot commit willful or malicious acts, and Plaintiffs have not pled any acts or conduct by individuals who can bind the companies or corporate leaders that would plausibly give rise to a punitive

6

damages remedy.

Plaintiffs' allegations of alter ego liability of the WC-Entities for Chiquita are completely unsupported and should be dismissed. Chiquita owns and runs the Landfill and is the only proper Defendant here. Howse has not sufficiently alleged a unity of interest between the Defendants, and they fail to allege a single fact suggesting any inequitable outcome would result in this dispute absent an alter ego theory.

Finally, Plaintiffs also fail to make independent factual allegations against the WC-Entities and instead engage in improper group pleading. Howse has not articulated facts supporting a cause of action for direct liability against the Defendants other than Chiquita.

This Court therefore should dismiss Plaintiffs' negligence per se claim, punitive damages prayer, alter ego allegations, and all of Plaintiffs' claims against the WC-Entities.

## II.    BACKGROUND

### A.    The Chiquita Canyon Landfill.

The Landfill has played a key role in serving Southern California's solid waste and recycling needs since the early 1970s. *See* TAC ¶ 1 (the "Landfill has served Los Angeles County for more than five decades."). The County has long recognized that the Landfill is vital public health and economic infrastructure and has approved successive permits to allow Chiquita to manage and dispose of non-hazardous municipal solid waste at the Landfill. *See* TAC ¶¶ 50, 53-54, & 67-68. Hundreds of Southern California cities, businesses, and institutions depend on the Landfill for waste disposal, serving the needs of millions of residents.

The Landfill is situated in a deep canyon on 639 acres of mostly hilly terrain in Castaic, California, roughly two miles west of I-5. It accepts only non-hazardous residential and commercial municipal solid wastes and beneficial reuse materials such as soil or rubble that are used for cover and landfill maintenance. Chiquita employs sophisticated engineering measures to minimize environmental impacts, including liner

1 systems, and landfill gas and liquids collection and control systems.

2   Like thousands of landfills across the United States, the Landfill accepts

3 putrescible wastes – much of it generated by households – that can generate odor.

4 Chiquita has employed state of the art practices that were designed by independent

5 experts under the direction of the South Coast Air Quality Management District ("South

6 Coast AQMD") to keep odors generated from active landfill operations on-site. These

7 practices include strategically placed fans and odor neutralizer misting systems, and use

8 of expert-designed standard operating procedures for classifying, sequencing, and

9 managing incoming waste.

10   The allegations in the Complaint focus on Notices of Violation ("NOVs") issued

11 by the South Coast AQMD beginning in May 2023. *See* TAC ¶ 116. It is a matter of

12 public knowledge that the Landfill has been experiencing a rare underground reaction

13 that is causing an increase in the production of landfill gas and liquids, both of which

14 have the potential to cause unique odors. The reaction is occurring in a long-closed area

15 of the Landfill. Chiquita is working in collaboration with relevant County, regional, state,

16 and federal agencies to mitigate this reaction and any impacts.

17   Since September 6, 2023, Chiquita has been operating under a Stipulated Order for

18 Abatement with the South Coast AQMD,[1] which currently requires Chiquita to

19 implement seventy-seven conditions aimed at addressing the reaction and any impacts.[2]

20 Pursuant to this Stipulated Order, Chiquita is installing over 200 new vertical landfill gas

21 extraction wells equipped with dewatering pumps to help pull hot liquids and gas from

22 the Landfill, the key strategy for mitigating the landfill reaction. The Stipulated Order

---

[1] *See* Request for Judicial Notice Exhibit 1 (April 24, 2024 modifications to the Stipulated Order).

[2] Landfill odors are the subject of the September 6, 2023 Stipulated Order between South Coast AQMD and Chiquita. This Stipulated Order has since been modified on January 17, March 21, and April 24, 2024. Because Chiquita is intensely regulated on the issues that are the subject of the Complaint, Chiquita reserves its right to seek a stay of at least the injunctive relief portion of this case pursuant to the primary jurisdiction doctrine. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760-62 (9th Cir. 2015) (stay appropriate regarding labelling issue entrusted to the FDA for resolution under primary jurisdiction doctrine).

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

also requires Chiquita to cover multi-acre portions of the Landfill with a geosynthetic
cover to help control surface emissions and odors from the reaction area in the shorter-
term, and to promptly correct any observed issues with the cover soil and geosynthetic
cover to prevent excess surface emissions. It further requires Chiquita to maintain odor
control systems, including a perimeter odor control misting system, a semi-permanent
vapor odor control system, and orchard and tow-and-blow fans to directly mitigate
surface emissions and odors.

Chiquita is also implementing additional mitigation measures under the close
supervision of the County Health Department on behalf of CalRecycle[3] and the U.S.
Environmental Protection Agency ("EPA").[4] These additional measures include
installation of twenty in-situ temperature monitoring probes to track waste temperatures
in and around the reaction area to monitor for potential spread of the reaction, detailed
requirements for monitoring any issues with the cover soil and geosynthetic cover, and
tracking and expert evaluation of settlement and slope stability. In accordance with a
Unilateral Administrative Order issued by EPA, Chiquita is also preparing a
comprehensive master work plan to mitigate the reaction, including an air monitoring
plan to track air quality in the communities surrounding the Landfill and a plan to prevent
off-site impacts to surface or subsurface water. In summary, in contrast to Plaintiffs'
enflamed narrative, Chiquita and its regulators are undertaking massive mitigation
measures that will slow and eventually stop this reaction, thereby reducing related odors.
At the same time, Chiquita continues to provide the County vital public infrastructure for
waste management.

### B.    The Howse Complaint and Allegations.

Plaintiffs reside in communities neighboring the Landfill. *See* TAC ¶ 150. They

---

[3] *See* Request for Judicial Notice Exhibit 2 (June 6, 2024 County Health Department Compliance Order).

[4] *See* Request for Judicial Notice Exhibit 3 (February 2, 2024 EPA Unilateral Administrative Order).

9

allege that the increase in the production of landfill gas and leachate from the Landfill's underground reaction "has caused noxious odors and toxic gases to emanate from the Landfill," *id.* ¶ 3, and that the Defendants allegedly "failed" to "prevent… [and] stop" the reaction and failed to "construct, maintain, repair, and operate the Landfill in a manner that would not harm Plaintiffs . . . ." *Id.* ¶ 162.

With little explanation, Plaintiffs allege the "odors, pollutants and air contaminants … are harmful to Plaintiffs' health" and "obstruct the free use of their property." *Id.* ¶ 165. They further allege that the odors have "interfere[d] with the comfortable enjoyment of life and/or property" by causing "personal injury," "distress," and "embarrassment" to Plaintiffs. *Id.* Howse alleges that Defendants' actions "were (and are) intentional and unreasonable, or unintentional, but negligent, reckless, or abnormally dangerous." *Id.* ¶ 166. Additionally, they allege Defendants negligently "construct[ed], maintain[ed], and/or operate[ ]" the Landfill, "directly and proximately caus[ing] Plaintiffs to suffer personal injury and damage to their properties." *Id.* ¶¶ 182-83.

The TAC alleges generally that "Defendants' actions were, and continue to be, intentional, willful, malicious, oppressive, and made with a conscious disregard for the rights or safety of Plaintiffs." *Id.* ¶ 173; *see also id.* ¶¶ 185, 198.

Plaintiffs contend that Defendants violated South Coast AQMD Rule 402 and California Health and Safety Code § 41700, that Plaintiffs "were and are among the class of persons that [the rule and code] were intended to protect," and that they are entitled to recovery for Defendants' alleged violation of Rule 402 and Section 41700. *Id.* ¶¶ 190-98.

On these allegations, Howse asserts causes of action for: (1) private nuisance; (2) negligence; (3) and negligence per se.[5] Each cause of action is brought against all Defendants and based on generic factual allegations that are improper group pleading.

---

[5] Plaintiffs' second cause of action groups "negligence" and "negligence per se," not pleading a third cause of action. TAC ¶¶ 176-99. But Plaintiffs still plead each separately and seek recovery for both negligence and negligence per se. *See id.* ¶¶ 186 (seeking compensatory, exemplary, and punitive damages among other relief for negligence) & 199 (same for negligence per se).

*See, e.g.*, TAC ¶¶ 34 ("Each Defendant committed, conspired to commit, and/or ratified each of the acts and omissions alleged") & 161 ("the Landfill was constructed, maintained, and/or operated by Defendants"). Plaintiffs also allege alter ego liability based on an alleged "unity of interest" between Defendants. *Id.* ¶ 21. Plaintiffs seek injunctive relief, closure of the Landfill, compensatory and punitive damages, and costs for future medical monitoring. *Id.* at Prayer for Relief.

### C.    Procedural History.

Howse filed the first Complaint on August 25, 2023, in Los Angeles County Superior Court. Defendants timely removed the case to this Court. ECF No. 1.[6]  Chiquita filed a motion to dismiss on November 13, 2023. ECF 29.

Before briefing on the motion to dismiss was completed, Plaintiffs filed a First Amended Complaint on December 4, 2023. ECF 36. In the First Amended Complaint, Plaintiffs named Chiquita, CCI, and WCUS as defendants. *Id.* Plaintiffs filed a Renewed Motion to Remand on January 9, 2024. ECF 49.

On April 17, 2024, after the Renewed Motion for Remand was fully briefed but had not yet been argued, Plaintiffs voluntarily withdrew their Renewed Motion to Remand. ECF 60. Shortly thereafter, they voluntarily dismissed Waste Connections of California, Inc. and Waste Connections Management Services, Inc. ECF 64.

On May 22, 2024, Plaintiffs filed a Second Amended Complaint which dropped the class action allegations and instead named 731 individual plaintiffs. ECF 71. The Second Amended Complaint names Chiquita, CCI, and WCUS as defendants.

On June 19, 2024, Plaintiffs filed a Third Amended Complaint, adding 215 more Plaintiffs and naming the same three Waste Connections affiliated Defendants. ECF 74.

## III.    STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."

---

[6] The original Complaint named four Waste Connection entities as defendants: Chiquita, Waste Connections of California, Inc., Waste Connections Management Services, Inc., and WCUS.

11

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The pleadings must raise the right to relief beyond a speculative level; "labels and conclusions" are not enough, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    Plaintiffs' Negligence Per Se Claim Fails as A Matter of Law.

In California, the "doctrine of negligence per se is not a separate cause of action, but [instead] creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Turner v. Seterus, Inc.* 27 Cal. App. 5th 516, 534 (2018) (citations omitted); *accord Somerville v. Medtronic, Inc.*, No. 820CV02177JLSADS, 2021 WL 5926029, at *12 (C.D. Cal. Aug. 19, 2021) ("California law does not recognize negligence per se as a separate cause of action").[7] The doctrine does not establish tort liability. *See Kinder Morgan*, 569 F. Supp. 2d at 1087. Instead, there must first be a "valid underlying cause of negligence for the doctrine to apply." *Millard*, 156 Cal. App. 4th at 1353, n.2; *see also* Cal. Evid. Code § 669(a)(1).

Howse pleads negligence per se as a sub-cause of action but seeks "compensatory, exemplary, and punitive damages, medical monitoring, injunctive relief," and fees from Defendants based on both negligence and negligence per se. TAC ¶¶ 186 & 199. But no matter how Plaintiffs try to dress their allegations, negligence per se is an "evidentiary doctrine" and not a standalone basis for relief. *Kinder Morgan*, 569 F. Supp. 2d at 1087. As a matter of law, Plaintiffs' negligence per se cause of action should be dismissed

---

[7] *See also People of California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008) (same); *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1353, n.2 (2007) (same).

without leave to amend.

Even if negligence per se were an independent cause of action, alleged violations of California Health and Safety Code Section 41700 ("Section 41700") and South Coast AQMD Rule 402 ("AQMD R. 402") could not serve as predicates for such a claim. Negligence per se "does not provide a private right of action for violation of a statute" or a public entity "regulation." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006); *see, e.g.*, *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, at *6-7 (N.D. Cal. Aug. 1, 2019) (dismissing a purported negligence per se claim based upon alleged violations of statutes that did not afford a private cause of action). Section 41700 and AQMD R. 402 – cited by Plaintiffs as the bases of their negligence per se claim – do not provide for private causes of action. *Compare* TAC ¶¶ 187-99 *with* Cal. Health & Safety Code § 42402 and 42402.3 (code sections addressing violations of section 41700 with fines).[8] Indeed, only the government can pursue civil penalties for violations of Section 41700 and AQMD R. 402. *See* Cal. Health & Safety Code § 42403(a); *see also Takhar v. People ex rel. Feather River Air Quality Mgmt. Dist.*, 27 Cal. App. 5th 15, 19 (2018) (violations of Section 41700 are addressed through civil penalties, not private causes of action, as set forth in Sections 42402 through 42402.3).

Plaintiffs cannot pursue civil penalties for alleged violations of Section 41700 and AQMD R. 402 because there is no private right of action available. *See Takhar*, 27 Cal. App. 5th at 19. Plaintiffs could never plead otherwise, and the claim should be dismissed with prejudice.

### B.    The Punitive Damages Request Should Be Dismissed.

Odor nuisance cases rarely support punitive damages, particularly for landfills.

---

[8] The South Coast AQMD website confirms that "South Coast AQMD's enforcement authority for civil penalties, as required by the State Implementation Plan, can be found in the California Health and Safety Code Civil Penalties sections 42402, 42402.1, 42402.2, 42402.3, 42402.4, and 42402.5." *See* Request for Judicial Notice Exhibit 4 (SCAQMD Enforcement Website).

This is for many reasons, including that landfills are critical public infrastructure operating under rigorous permitting requirements and oversight that recognize that some odors are a consequence of normal operations. Plaintiffs' prayer for punitive damages should be dismissed because they have not alleged flagrant conduct by individuals who can bind the Defendants.

Under California law, the imposition of punitive damages should be allowed only in the "clearest of cases." *Woolstrum v. Mailloux*, 141 Cal. App. 3d Supp. 1, 9 (1983). Punitive damages are proper only if a defendant is "guilty of oppression, fraud, or malice." *Jones v. Cnty. of San Bernadino*, No. EDCV 21-695 JGB (SPx), 2022 WL 3013060, at *7 (C.D. Cal. May 19, 2022) (citing Cal. Civ. Code § 3294(a)). "Mere spite of will is not sufficient; and mere negligence, even gross negligence, is not sufficient to justify an award of punitive damages." *Id.* (citing *Ebaugh v. Rabkin*, 99 Cal. Rptr. 706, 7084 (Cal. Ct. App. 1972)). Further, punitive damages against a corporation are only available when Plaintiffs plead malicious acts by corporate leaders or individuals who can bind the companies. *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).

### 1. Plaintiffs' Rote Recital of the Legal Standard for Punitive Damages Is Insufficient.

The TAC's conclusory characterizations of vague, generalized conduct by all Defendants fail to satisfy the pleading standards necessary to seek punitive damages. Allegations in support of punitive damages must "meet the [pleading] standards elaborated under *Iqbal* and *Twombly*." *Somerville*, 2021 WL 5926029, at *13 (dismissing request for punitive damages where plaintiff's allegations of "a conscious indifference to, and/or flagrant disregard" by medical device manufacturer were "conclusory"); *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1144 (E.D. Cal. 2013) (dismissing punitive damages claim over site contamination case because plaintiff's allegations of "willful, oppressive, and malicious" conduct did not plausibly support punitive damages). When a plaintiff's punitive damages request is based on mere "conclusory characterization[s] of [a] defendant's conduct as intentional, wilful [sic] and fraudulent," such allegations are

14

1    properly dismissed. *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977).

2         A claim for punitive damages is "inadequately pleaded" when it merely includes

3    allegations that there was a problem and the defendant "demonstrated conscious

4    indifference" to such problem without including further factual specifics that would

5    "support an inference of oppression, fraud, or malice." *Sommerville*, 2021 WL 5926029,

6    at *13; *see also Coppola*, 982 F. Supp. 2d at 1144 (bare allegations that a defendant acted

7    "with full knowledge of the consequences and the damages being caused" without further

8    factual support are insufficient as a matter of law). Courts routinely dismiss punitive

9    damages prayers for lack of specificity. *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d

10   1132, 1148 (E.D. Cal. 2010) (dismissing punitive damages request because the plaintiff's

11   "bare characterization of [d]efendant's motives as evil" were unsupported by allegation

12   of any specific facts).[9]

13        Here, Plaintiffs' punitive damages allegations are of "the-defendant-unlawfully-

14   harmed-me accusation[s]" variety the Supreme Court has proscribed. *See Iqbal*, 556 U.S.

15   at 678. As to nuisance, the Plaintiffs—without further factual support—allege only that

16   Defendants "caused" and "failed to prevent" the reaction, and failed to "construct,

17   maintain, repair or operate the Landfill." TAC ¶ 162. This is garden-variety negligence

18   and nothing more. From these allegations, Plaintiffs conclude "Defendants' actions were,

19   and continue to be, intentional, willful, malicious, oppressive, and made with a conscious

20   disregard for the rights or safety of Plaintiffs." *Id.* ¶ 173. Such rote allegations are

21

22   _____

[9] *See also Perez v. Auto Tech. Co.*, No. 13-06728-MMM (VBKx), 2014 WL 12588644, at *6 (C.D. Cal.
23   July 14, 2014) (dismissing punitive damages prayer where plaintiff failed to support her conclusory
     allegations with sufficient facts beyond alleging that defendant acted with malice and oppression and a
24   "conscious disregard" for the safety of others); *Ananiev v. Aurora Loan Services., LLC*, No. C 12-2275
     SI, 2012 WL 2838689, at *7 (N.D. Cal. July 10, 2012) ("The Court ... agrees with [the] defendants that
25   there are no factual allegations supporting a claim for punitive damages ... [the] plaintiff may not simply
     include conclusory allegations of fraud, malice or oppression."); *Garcia v. M-F Athletic Co.*, CIV. 11-
26   2430 WBS GGH, 2012 WL 531008, at *4 (E.D. Cal. Feb. 17, 2012) ("Nothing [the] plaintiff alleges in
     the [Complaint] suggests how it is that defendants here acted in a despicable manner."); *Smith v.*
27   *Superior Court*, 13 Cal. Rptr. 2d 1033, 1038 (Cal. Ct. App. 1992) (dismissing punitive damages prayer
     where defendants' complaint was "devoid of any factual assertions supporting a conclusion petitioners
28   acted with oppression, fraud or malice.").

insufficient. *See Brousseau*, 74 Cal App. 3d at 872 (dismissing conclusory punitive damages allegations).

Plaintiffs' requests for punitive damages for negligence and negligence per se fail for the same reasons. *See* TAC ¶¶ 180, 185 (alleging Defendants "negligently… construct[ed], maintain[ed], and/or operat[ed] the Landfill" and that "Defendants' breaches… were committed knowingly, maliciously, and with a conscious disregard") & 192-93, 198 (alleging Defendants violated rules and statutes justifying punitive damages for negligence per se because Defendants' violations "were committed knowingly, maliciously, and with a conscious disregard").[10]

In short, Plaintiffs' parroting of the elements in California Civil Code § 3294 are "'devoid of any factual assertions supporting a conclusion [Defendants] acted with oppression, fraud or malice." *Endurance Am. Specialty Ins. Co. v. Lance–Kashian & Co.*, No. CV F 10-1284 LJO DLB, 2010 WL 3619476, at *17 (E. D. Cal. Sept. 13, 2010) (citation omitted); *see also Rivin v. Patrick K. Willis Co.*, No. 2:20-cv-07431-RGK-KS, 2020 WL 8365251, at *3 (C.D. Cal. Dec. 4, 2020) (dismissing punitive damages request where complaint "merely regurgitates the definition of malice, fraud, and oppression, and reiterates § 3294's elements . . . [and] contains no factual allegations that could plausibly give rise to a finding of fraud, oppression, or malice").

Chiquita operated a landfill, a necessary activity with inherent public value that by its nature does not give rise to the conduct that supports punitive damages. The prayer for punitive damages should be dismissed.

### 2. Howse Fails to Plead With Any Specificity Alleged Acts or Conduct by Individual Defendants or Corporate Leaders.

The punitive damages request fails under federal pleading standards and the

---

[10] As discussed above, *see* Section A, *supra*, neither Section 41700 nor AQMD R. 402 provide a private cause of action. California Health and Safety Code Sections 42402 through 42402.3 do not include a punitive damages remedy for violations of Section 41700 and AQMD R. 402 in any event. And "[w]here a right is created by statute and the statute does not expressly permit punitive damages, punitive damages under California Civil Code section 3294 are not available." *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007).

16

Court's analysis need go no further. In addition, punitive damages should be dismissed for the independent reason that a corporation cannot commit willful or malicious acts, and Plaintiffs fail to plead with specificity any acts or conduct by individuals or corporate leaders that would plausibly give rise to such an extreme remedy against the three corporate Defendants.

Corporations are "legal entities which do not have minds capable" of an "intent to injure or deceive." *Cruz,* 83 Cal. App. 4th at 167. Punitive damages "against a corporation therefore must rest on the malice of the corporation's employees," which requires "proof of malice among the corporate leaders … the officers, directors, or managing agents," because this "is the group whose intentions guide corporate conduct." *Id.* (citing Cal. Civ. Code § 3294(b)). Liability is confined this way to "avoid[ ] punishing the corporation for malice" of employees whose actions do not "reflect the corporate 'state of mind' or the intention of corporate leaders." *Id.* In short, California law "does not impute every employee's malice, fraud, or oppression to a corporation." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 817 (N.D. Cal. 2015) (internal citations omitted).

Accordingly, plaintiffs must plead the acts or conduct claimed to be willful or malicious and the individuals or "employees [who] committed the wrongful acts." *Grimberg v. United Airlines, Inc.*, No. CV 22-8191-MWF (JCX), 2023 WL 2628708, at *4 (C.D. Cal. Jan. 10, 2023) (dismissing punitive damages prayer where plaintiffs failed to specify which of defendants or defendants' employees committed the acts); *see also Frausto v. Bank of Am., Nat'l Ass'n*, No. SA CV 19-1583-DOC-ADS, 2019 WL 8012420, at *8 (C.D. Cal. Dec. 4, 2019) (dismissing punitive damages prayer where plaintiff "d[id] not allege, except in conclusory fashion, that any of her supervisors or anyone who discriminated against her was an officer, director, or managing agent" of defendant).[11] Further, if the alleged actors are *not* corporate leaders, plaintiffs must allege

---

[11] In *Grimberg*, plaintiffs were permitted "***one, and only one***, chance to amend the Complaint to allege

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

1  that the acts or conduct were "ratified" by a corporate leader. *Achal*, 114 F. Supp. 3d at

2  816 (N.D. Cal. 2015) (dismissing prayer for punitive damages where plaintiff failed to

3  allege "sufficient facts from which the Court can infer [the] acts were ratified by a

4  [corporate leader], as required to state a claim for punitive damages").

5      Here, Plaintiffs do not aver any acts or conduct by *any* Defendants, Defendants'

6  employees, or Defendants' "corporate leaders" that could plausibly confer entitlement to

7  punitive damages. *Cruz*, 83 Cal. App. 4th at 167. The only allegations specific to any

8  individuals relate to employees attending public hearings and monthly meetings—

9  conduct that plainly is not "malicious." *See* TAC ¶¶ 30-32. For all other allegations,

10  Plaintiffs make no effort whatsoever to distinguish allegations of acts, omissions, or

11  conduct between Defendants—whether corporate, corporate leaders, or individual Doe

12  Defendants. *See, e.g.*, TAC ¶¶ 34 ("Each Defendant committed, conspired to commit,

13  and/or ratified each of the acts and omissions alleged") & 161 ("the Landfill was

14  constructed, maintained, and/or operated by Defendants"). Plaintiffs' allegations of

15  purported illegal dumping further illustrate this shortcoming. *See* TAC ¶¶ 7, 142 & 144.

16  Plaintiffs make these allegations against "Defendants" generally without the requisite

17  specificity of individual or corporate actors.

18      Again, the TAC can't support punitive damages on the merits or legally, because

19  the landfill business is a routinized and regulated process that is not susceptible to the

20  conduct for which punitive damages are reserved, typically fraud and malice.

21  Corporations cannot commit willful or malicious acts and Plaintiffs fail to allege any

22  such acts or conduct by individual Doe Defendants, Defendants' corporate leaders, or

23  Defendants' employees ratified by corporate leaders. The Howse punitive damages

24  prayer should be dismissed.

25

26  sufficient facts to establish a plausible entitlement to punitive damages." 2023 WL 2628708, at *5
    (emphasis in original). The Court found plaintiffs' amended pleading "still fail[ed] to allege facts that
27  support a prayer for punitive damages," and dismissed the prayer with prejudice. *Grimberg v. United
    Airlines, Inc.*, No. CV 22-8191-MWF (JCX), 2023 WL 3431912, at *5 (C.D. Cal. Feb. 27, 2023),
28  *reconsideration denied*, No. CV 22-8191-MWF (JCX), 2023 WL 4291794 (C.D. Cal. Apr. 4, 2023).

18

**C.    Plaintiffs Have Not Alleged Facts Sufficient to Support Alter Ego Liability or Piercing of the Corporate Veil.**

Howse offers no supported much less plausible allegations that Chiquita – which has owned and operated the Landfill for decades – is the alter ego of the separate WC-Entities. To invoke the alter ego doctrine, a plaintiff must allege (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) there would "be an inequitable result if the acts in question are treated as those of the corporation alone." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000)). Conclusory allegations do not suffice. "[A] plaintiff must allege specific facts supporting *both* of the necessary elements" to survive a motion to dismiss. *Gerritsen*, 116 F. Supp. 3d at 1136 (emphasis added); *see also Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983) (plaintiff failed to state a claim against an individual defendant where the complaint contained only a conclusory allegation of alter ego status without alleging the elements of the doctrine); *Cree, Inc. v. Tarr Inc.*, No. 3:17-cv-00506-GPC-NLS, 2017 WL 3219974, at *7 (S.D. Cal. July 28, 2017) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather a plaintiff must allege specific facts supporting both of the necessary elements.")

**1.    The Allegations Do Not Give Rise to A Plausible Inference of Unity of Interest Between Defendants.**

Plaintiffs' scarce allegations regarding the actual relationship between Chiquita and the WC-Entities amount to no more than typical corporate practices of shared officers and management resources and do not plead the facts needed for the difficult claim of an alter ego relationship veil piercing. California courts typically examine eight factors to assess whether a unity of interest has been properly pleaded: "(1) the commingling of funds and other assets; (2) holding out by one entity that it is liable for the debts of another; (3) identical equitable ownership of the two companies; (4) use of

19

1  the same offices and employees; (5) use of one company as a mere shell for the other; (6)
2  inadequate capitalization; (7) lack of segregation of corporate records; and (8) identical
3  directors and officers." *NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK
4  HRL, 2015 WL 400251, at *5 (N.D. Cal. Jan. 29, 2015) (granting motion to dismiss
5  where plaintiff failed to "sufficiently allege the existence of an alter ego relationship")
6  (citations omitted); *see also Gerritsen*, 116 F. Supp. 3d at 1142 (dismissing alter ego
7  theory where complaint contained conclusory allegations of undercapitalization that were
8  "unsupported by facts"); *Cree, Inc.*, 2017 WL 3219974, at *7 (dismissing plaintiff's alter
9  ego theory for insufficient factual support for unity of interest).

10        Unity of interest thus requires "a showing that the parent controls the subsidiary to
11 such a degree as to render the latter the mere instrumentality of the former." *Gerritsen*,
12 116 F. Supp. 3d at 1138 (citing *NetApp, Inc.*, 2015 WL 400251, at *5). Mere conclusory
13 allegations of unity of interest will not do. *See Iqbal*, 556 U.S. at 678; *see also Gerritsen*,
14 116 F. Supp. 3d at 1136.

15        Howse fails to allege any facts as to five of the eight unity of interest factors.
16 Specifically, Plaintiffs have not alleged any commingling of Defendants' funds and other
17 assets, identical equitable ownership, use of one company as a shell for the others,
18 inadequate capitalization of the subsidiaries, or lack of segregation of corporate records.
19 *See generally* TAC; *see also NetApp, Inc.*, 2015 WL 400251, at *5 (identifying factors
20 courts consider in assessing alter ego allegations). This strongly suggests that there is not
21 a "unity of interest" between the Defendants.

22        As to the remaining three factors, Plaintiffs' allegations fall far short of factually
23 supporting a theory of alter ego liability. Their only allegations are related to purported
24 ownership, membership, and use of similar offices and employees. *See* TAC ¶¶ 17-32.
25 Plaintiffs aver "[o]n information and belief" that WCUS is the "sole owner" of CCI, that
26 CCI is the "sole member" of Chiquita, and that "[o]n information and belief" WCUS
27 "exercises significant control" over CCI and Chiquita, "including but not limited to the
28 general management of, and daily activities at, the Landfill." TAC ¶¶ 17-18, 20 & 27-28;

20

*see also Gerritsen*, 116 F. Supp. 3d at 1142 (dismissing alter ego theory in part because some allegations on "information and belief" lacked factual support). But as the Ninth Circuit has long recognized, pleading complete control of a subsidiary does not support an alter ego relationship. *See Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("[The] mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law"); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) ("100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent").[12]

Further, allegations that Defendants share corporate officers and executive management does not support a finding of unity of interest. TAC ¶¶ 24-26. Defendants' sharing certain corporate officers and executive management teams "alone… is not suggestive of a unity of interest and ownership" because it is "considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Gerritsen*, 116 F. Supp. 3d at 1138 (citing *Sonora Diamond Corp.*, 83 Cal. App. 4th at 548-49). Howse has not pled any facts to suggest Defendants' common officers and management are anything other than a normal, "common form of corporate governance." *Id.* at 1139; *see also Inst. of Veterinary Pathology, Inc. v. Cal. Health Lab'ys, Inc.*, 116 Cal. App. 3d 111, 120 (1981) (finding no alter ego liability where plaintiff failed to present evidence of a parent company's "manipulative control of its subsidiaries" and only established "intercorporate connections"). Standing alone, Plaintiffs' allegations regarding purported ownership and use of similar officers do not suffice to support their alter ego theory of liability, even at the pleading stage. *See NetApp, Inc.*, 2015 WL 400251, at *6.

Their contention that Defendants "present themselves to the public as one entity"

---

[12] *See also Gerritsen* 116 F. Supp. 3d at 1138 ("a parent's complete control of a subsidiary does not show that there is an alter ego relationship between the two."); *NetApp, Inc.*, 2015 WL 400251, at *6 ("'[one hundred percent] control' of a subsidiary by a parent 'does not by itself make a subsidiary the alter ego of the parent'").

are of no moment. TAC ¶¶ 22-23 & 29-32. The inquiry for alter ego liability is whether one entity holds itself out as "liable for the debts of another." *NetApp, Inc.*, 2015 WL 400251, at *5. The allegations in the TAC do not plausibly suggest any of the corporate entities hold themselves out as liable for debts of the others, and instead buttress the distinction between Defendants. Plaintiffs contend the Landfill website and the letterhead used by Landfill employees read "Chiquita Canyon A Waste Connections Company." TAC ¶¶ 22-23. Such branding is not indicative of any liability for the *debts* of the subsidiary Defendants but in fact reflects them being distinct entities. Additionally, denominating CCI and Chiquita as companies under the WCUS umbrella, issuing "press releases" and speaking publicly "on their behalf," and sharing the "same office location," are not "indicative of an alter ego relationship… rather, they are common aspects of parent-subsidiary relationships." *Gerritsen*, 116 F. Supp. 3d at 1140; *see also NetApp, Inc.*, 2015 WL 400251, at *6.

Consistent with the courts' rulings in *Gerritson*, *NetApp, Inc.*, and *Cree, Inc.*, Plaintiffs here allege "some" facts "of the type that can, in an appropriate case, adequately plead 'unity of interest,'" but their allegations "do not give rise to a plausible inference that [WCUS] dictates every facet of [Chiquita's and CCI's] business." *Gerritson*, 116 F. Supp. 3d at 1142 (citing *NetApp, Inc.*, 2015 WL 400251, at *5); *see also Cree, Inc.*, 2017 WL 3219974, at *7. The alter ego theory should therefore be dismissed.

### 2. There is No Suggestion That Any Inequitable Outcome Would Result Absent Alter Ego Liability.

The Howse alter ego theory fails on the independent basis of a failure to plead any facts showing an "inequitable result if the [alleged] acts in question are treated as those of" one Defendant or another. *Gerritsen*, 116 F. Supp. 3d at 1136 (citing *Sonora Diamond Corp.*, 83 Cal. App. 4th at 526 & *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985)). The inequitable result prong exists to "address circumstances in which adherence to the fiction of the separate existence of the corporation would … sanction a

1  fraud or promote injustice." *Id.* (quoting *First Western Bank & Trust Co. v. Bookasta*,

2  267 Cal. App. 2d 910, 914–15 (1968)). Allegations of "[b]ad faith" by a defendant are a

3  "critical factor in the analysis." *Id.* at 1143 (citing *Neilson v. Union Bank of California,*

4  *N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)). Where a plaintiff has not "proffered

5  any allegation… directed at the 'inequitable result' prong," their alter ego allegations are

6  properly dismissed. *Cree, Inc.*, 2017 WL 3219974, at *8.

7      Here, Plaintiffs fail to allege any facts directed at the inequitable result prong of the

8  alter ego test. *See generally* TAC. Their failure to "proffer any allegation[s]" on one of

9  the two necessary elements of alter ego liability supports dismissal. *Cree, Inc.*, 2017 WL

10  3219974, at *8.

11  **D.    The TAC Offers No Independent Allegations Against The WC-Entities**

12  **and Fails to Identify Which Defendants' Actions Give Rise to Their**

13  **Claims.**

14      Plaintiffs make no independent factual allegations against the WC-Entities that

15  would connect them to the causes of action. Instead, throughout the Complaint, Plaintiffs

16  allege that "Defendants" engaged in conduct for which Plaintiffs seek relief. They state

17  that "Defendants, primarily through Chiquita Canyon, LLC, operate the landfill." TAC ¶

18  19. As to the *conduct* of the WC-Entities, they allege only "[o]n information and belief"

19  that "Waste Connections [US, Inc.] exercises significant control of Chiquita Canyon, Inc.

20  and Chiquita Canyon, LLC, including… the general management of, and daily activities

21  at, the Landfill." *Id.* ¶ 20.

22      As discussed above, *see* Section C, *supra*, the only thing purportedly connecting

23  the WC-Entities to Plaintiffs' claims is an insufficiently pleaded theory of alter ego

24  liability. Without more, their "on information and belief" contentions trying to bind all

25  Defendants into a single actor are nothing more than insufficient "rote recitals."

26  *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV1406691SJOVBKX, 2015 WL

27  13665037, at *5 (C.D. Cal. Oct. 19, 2015), *aff'd*, 789 F. App'x 608 (9th Cir. 2020) (citing

28  *Simonyan v. Ally Fin., Inc.*, No. CV 12-08495 JFW, 2013 WL 45453, at *2 (C.D. Cal.

23

1  Jan. 3, 2013)). The Howse claims against the WC-Entities should therefore be dismissed

2  for failure to state any plausible claim for relief against them.

3      Further, they fail to identify which allegations pertain to which Defendant(s)

4  throughout each allegation and claim. Indeed, for each cause of action, Plaintiffs allege

5  that the Defendants, collectively, owed a duty or took an action (or omission) that gives

6  rise to the claim, without ever specifying which Defendant did what. *See, e.g.*, TAC ¶¶

7  166 ("Defendants' actions or failures to act were…"), 178 ("Defendants owed Plaintiffs

8  the duty…"), 195 ("Defendants' violations of South Coast AQMD Rule 402 and

9  California Health & Safety Code § 41700…").

10      Such pleading is insufficient to put any of the Defendants on notice of which

11  allegations they must be prepared to defend, in violation of basic pleading standards. *See,*

12  *e.g.*, *Altman v. PNC Mortg.,* 850 F. Supp. 2d 1057, 1067 (E.D. Cal. 2012) ("A plaintiff

13  suing multiple defendants 'must allege the basis of his claim against each defendant to

14  satisfy Federal Rule of Civil Procedure 8(a)(2)'"); *Gauvin v. Trombatore*, 682 F. Supp.

15  1067, 1071 (N.D. Cal. 1988) (dismissing plaintiff's claim for alleged constitutional

16  violations because rather than explain how each defendant violated his rights, plaintiff

17  "lumped" all of the defendants "[into] a single, broad allegation."). Sufficient pleadings

18  require more than "everyone did everything" allegations. *Destfino v. Reiswig*, 630 F.3d

19  952, 958 (9th Cir. 2011). Courts routinely dismiss complaints like that of the Plaintiffs

20  here for failure to set forth "specific allegations against each individual [d]efendant,"

21  because an assertion that defendants may have played some role "does not mean that they

22  all engaged in the same conduct in the same way." *Yagman v. Wunderlich*, No. 2:21-cv-

23  06093-SB-MRW, 2021 WL 5707166, at *3 (C.D. Cal. Nov. 22, 2021) (dismissing

24  complaint for group pleading under Federal Rule 8 pleading standard). Because Plaintiffs

25  have not stated a cause of action for direct liability against the WC-Entities, the claims

26  against these entities should be dismissed.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

## V.    CONCLUSION

This case is about one landfill, its alleged effects on surrounding property, and the landfills' actions. It is not about negligence per se, malicious conduct, or the actions of corporations with no connections to Chiquita. The Court should streamline these proceedings at this early juncture and permit only those plausible allegations and claims to proceed. The Court should dismiss Plaintiffs' negligence per se claim, punitive damages prayer, alter ego allegations, and all claims against the WC-Entities.

Dated: July 3, 2024.                    Respectfully submitted,

BY:  /s/ Kaitlyn D. Shannon
PAUL S. CHAN (SBN 183406)
 pchan@birdmarella.com
ARIEL A. NEUMAN (SBN 241594)
aneuman@birdmarella.com
SHOSHANA E. BANNETT (SBN 241977)
 sbannett@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM
 DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone: (310) 201-2100

GARY J. SMITH
 gsmith@bdlaw.com
JACOB P. DUGINSKI (SBN 316091)
Jduginski@bdlaw.com
BEVERIDGE & DIAMOND P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 262-4000

KAITLYN D. SHANNON (SBN 296735)
MEGAN L. MORGAN
(*admitted pro hac vice*)
mmorgan@bdlaw.com
JAMES B. SLAUGHTER
(*admitted pro hac vice*)
jslaughter@bdlaw.com
BEVERIDGE & DIAMOND P.C.
1900 N Street, N.W., Suite 100
Washington, DC 20036
Telephone: (202) 789-6000

*Attorneys for Defendants Chiquita Canyon,*
*Chiquita Canyon, Inc. and Waste Connections US,*
*Inc.*

1

# **CERTIFICATE OF COMPLIANCE**

2

3

The undersigned, counsel of record for Defendants Chiquita Canyon, LLC,

4

Chiquita Canyon, Inc., and Waste Connections US, Inc. certifies that this brief contains

5

6733 words, which complies with the word limit set by L.R. 11-6.1.

6

7

DATED: July 3, 2024                           /s/  Kaitlyn D. Shannon

Kaitlyn D. Shannon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28